**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM BEAUMONT HOSPITAL –
ROYAL OAK,

    Plaintiff,

v.                                                                                               Case No. 16-13528

THOMAS E. PRICE, Secretary, Department
of Health and Human Services,

    Defendant.
                                                       /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT,
DENYING DEFENDANT'S MOTION FOR JUDGMENT, AND ORDERING FURTHER
BRIEFING**

This case is before the court on Plaintiff William Beaumont Hospital's request for judicial review of a final decision by Defendant Secretary of Health and Human Services. In the decision below, the Secretary determined that Beaumont had not brought forth sufficient, contemporaneous evidence showing that Beaumont was entitled to Medicare reimbursement for certain costs it incurred in providing clinical training to nursing students. Before the court are the parties' cross motions for judgment. (Dkt. ##15, 17.) The motion is, per the court's earlier directives, fully briefed (Dkt. ##15, 17, 18, 21) and the court has determined that a hearing is unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the following reasons, the court must deny both Beaumont's and the Secretary's motion, and order further briefing.[1]

---

[1] The court will also order that the name of Defendant Secretary be changed on the docket. At the time this action was filed, the Secretary of the Department of Health and Human Services was Sylvia Mathews Burwell, and her name appears on the

## I. BACKGROUND

### A. Regulatory Framework

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395*lll*, commonly known as the Medicare Act, "primarily provides medical benefits to eligible persons over the age of 65" and to persons with disabilities. *Med. Rehab. Servs., P.C. v. Shalala*, 17 F.3d 828, 830 (6th Cir. 1994); *Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 403 (6th Cir. 2007). Under the Medicare Act, certain health care providers are eligible for reimbursement by the Secretary of Health and Human Services for services they provide to Medicare beneficiaries. Providers seeking reimbursement submit their yearly cost reports to a fiscal intermediary (also known as a Medicare Administrative Contractor, or "MAC") acting as an agent for the Secretary. 42 C.F.R. § 405.1801(b); *see also Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 451 (1999). After reviewing the cost reports and determining how much is due for reimbursement, the MAC issues a "notice of program reimbursement."

Relevant here, federal law permits health care providers to be reimbursed for their costs associated with "the clinical training of students enrolled in an approved nursing or allied health education program that is not operated by the provider." 42 C.F.R. § 413.85(g). For eligible providers, reimbursements "are paid on a reasonable cost basis." *Id.* "Reasonable costs" are those "actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A); *see also* 42 C.F.R. § 413.9(a) (defining

---

court's docket. The Secretary now, however, is Thomas E. Price, M.D. The parties have listed Thomas E. Price, M.D., as the Defendant in the captions in their papers, but have not moved to update the docket; the court now does so *sua sponte*.

reasonable costs as including "all necessary and proper costs incurred in furnishing the services").

Eligibility for Medicare reimbursement requires providers to supply "adequate cost data": data "based on their financial and statistical records" that is "capable of verification by qualified auditors." 42 C.F.R. § 413.24(a). Federal regulations further set forth the requirements for adequate cost information:

> Adequate cost information must be obtained from the provider's records to support payments made for services furnished to beneficiaries. The requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended. Adequate data capable of being audited is consistent with good business concepts and effective and efficient management of any organization, whether it is operated for profit or on a nonprofit basis. It is a reasonable expectation on the part of any agency paying for services on a cost-reimbursement basis. In order to provide the required cost data and not impair comparability, financial and statistical records should be maintained in a manner consistent from one period to another. However, a proper regard for consistency need not preclude a desirable change in accounting procedures if there is reason to effect such change.

42 C.F.R. § 413.24(c). In addition, 42 C.F.R. § 413.20 describes recordkeeping requirements for providers, noting first that "[t]he principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program." Section 413.20(d)(1) requires providers to "furnish such information to the intermediary as may be necessary to—(i) Assure proper payment by the program . . . ; (ii) Receive program payments; and (iii) Satisfy program overpayment determinations." It also requires providers to "permit the contractor to examine such records and documents as are necessary to ascertain information pertinent to the determination of the proper amount of program payments due." 42 C.F.R. § 413.20(d)(2).

Non-binding guidelines and interpretive rules also appear in the Secretary's Provider Reimbursement Manual, which may assist providers and intermediaries in implementing Medicare Regulations.[2] *See Battle Creek*, 498 F.3d at 404. Section 2304 of the Manual provides that cost information must be current, accurate, and sufficiently detailed, including "all ledgers, books, records and original evidences of cost." Section 2312.2(E) further provides that when it comes to split salary costs—reimbursement where employees spend some, but not all, of their time on reimbursable work—the intermediary may approve the use of periodic "time studies," instead of "ongoing time reports," to establish those costs.

After the MAC issues its notice of program reimbursement, the provider may request a hearing with the Provider Reimbursement Review Board, an intermediate administrative body established by the Secretary. 42 U.S.C. § 1395oo(a). The decision of the Board is final unless the Secretary initiates review. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a). Where review is initiated, the Administrator for the Centers for Medicare and Medicaid Services ("CMS") may review the Board's decision on behalf of the Secretary. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a). The Administrator's review acts as the Secretary's final decision. 42 C.F.R. § 405.1877(a). Providers may appeal that decision to federal court in certain circumstances. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

---

[2] Available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Paper-Based-Manuals.html.

### B. Beaumont's Medicare Reimbursement for Clinical Nurse Training

The following facts are drawn from the testimony and documents in the administrative record and the parties' respective briefing; they are agreed upon unless otherwise noted.

Plaintiff William Beaumont Hospital – Royal Oak ("Beaumont") is a Magnet Hospital and level one trauma center in Southeast Michigan. It is also one of the largest teaching hospitals in the area: it provides clinical training to nursing students—training that is required for nursing students to receive their degrees.

Medicare reimburses Beaumont for its costs for the clinical training of nursing school students. The reimbursement happens on a pass-through basis—Beaumont "passes-through" the costs to Medicare for payment. The reimbursements reflect Beaumont's "incremental costs"—costs for employees and overhead to run the clinical nursing training program above what the hospital would normally incur as part of its regular functioning. The amount of these reimbursements for Beaumont is substantial. According to the record, Beaumont's total reimbursement for the 1988 cost report year was over $250 million. (AR, Dkt. #8 Pg. ID 242.)[3] Of that total, the reimbursement for clinical nursing training costs in particular was over $1.7 million. (*Id.* at Pg. ID 240.)

Beaumont was reimbursed on a pass-through basis for its clinical training costs from 1988 through 2004 without notable issue. In 2010, the MAC reviewed Beaumont's clinical training costs for fiscal years 2005 and 2006, the stated purpose for which was "to determine if the costs [were] properly documented" for the nurse training program.

---

[3] "AR" refers to the administrative record, filed in this action at Dkt. ##8, 8-1, 8-2. Though the AR contains page numbers, the court cites the Page IDs of its own docket for ease of reference.

5

(AR, Dkt. #8-2 Pg. ID 790.) The MAC ultimately disallowed the costs as pass-through, reclassifying them so as to allow them as operating costs. (AR, Dkt. #8-2 Pg. ID 802.)

The parties dispute why that happened. According to Beaumont, the MAC demanded in 2010 that Beaumont produce documentation from 2005 and 2006 that had never been requested from Beaumont before. Specifically, Beaumont says that for the first time the MAC asked for "time studies" documenting the amount of time Beaumont's registered nurse clinical trainers spent training students. (Dkt. #15 Pg. ID 1179.) Beaumont, not realizing that time studies would be required, had none to provide. (*Id.*) The Secretary, on the other hand, says that the costs were disallowed as pass-through because Beaumont "lack[ed] actual support for its nursing school costs." (Dkt. #17 Pg. ID 1282.)

On April 1, 2010, the MAC issued its Notice of Program Reimbursement for Beaumont's 2005 and 2006 fiscal years. (AR, Dkt. #8-2 Pg. ID 1070–72, 988–90.) Beaumont appealed the determinations to the Provider Reimbursement Review Board ("the Board"); in particular, it appealed the reclassification of the costs of the nurse training program. (*See* AR Dkt. #8-2 Pg. ID 957–61, 875–80.)

The Board held a hearing in March 2014. Beaumont and the MAC each presented evidence to the Board, and each called and cross-examined witnesses. Several of Beaumont's witnesses collectively testified to the number of students in the clinical nursing education program in 2005 and 2006 based on Beaumont's rosters. (AR, Dkt. #8 Pg. ID 268.) Registered nurses who provided clinical training estimated that they spent no less than 1.5 hours per 8-hour shift training nursing students. (*Id.* at Pg. ID 302; *see also* AR, Dkt. #8-1 Pg. ID 526–31.) And, the 1.5 hour estimate

6

represented time over and above the nurses' regular responsibilities on a shift. (AR, Dkt. #8 Pg. ID 312.)

Beaumont also presented as a witness Sue Liu, a former government auditor who took over as Beaumont's Director of Reimbursement in April 2013. Using the student rosters, the nurses' time estimates, and a database purportedly recording the number of hours per day that nursing students spent at Beaumont, Liu calculated an estimate for Beaumont's nursing school costs. (*Id.* at Pg. ID 243.) Specifically, Liu (1) calculated how many hours nursing students spent at Beaumont in 2005 and 2006, (2) converted the number of hours spent at Beaumont into days, and (3) assuming that registered nurses spent 1.5 hours per day training students, multiplied a nurse hourly rate by the number of hours spent training students. (*Id.*) Using these figures, Beaumont estimated conservatively that it had incurred $414,826 of costs in 2005 and $550,600 of costs in 2006. (AR Dkt. #8-1 Pg. ID 534, 595.)

In addition to the hours registered nurses spent teaching, Beaumont claimed costs for support staff salaries based on the amount of time staff spent administering the nurse training program. At the hearing before the Board, Beaumont submitted two job descriptions of support staff, each dated in 2013. (AR, Dkt. #8-1 Pg. ID 458–63.) Beaumont also called the manager of the Nursing Education and Research Department at Beaumont to testify; though she became manager in 2007, she described her understanding of the relevant positions in 2005 and 2006. (AR, Dkt. #8 Pg. ID 277.) She also testified that as part of Beaumont's calculation of costs for 2005 and 2006, she had provided the hospital's Reimbursement Department with the relevant job descriptions, the annual salary of those positions, and the percentage of time those employees spent

7

coordinating the nursing school program. (*Id.* at Pg. ID 290.) Based on that information, the Reimbursement Department concluded that Beaumont incurred $50,000 in incremental costs for administrative and clerical support staff each year. (*Id.*)

The Board issued a unanimous decision in favor of Beaumont in June 2016. (AR, Dkt. #8 Pg. ID 149–55.). Specifically, the Board determined that the MAC improperly requested time studies for the first time in 2010, and that such time studies were not required by federal regulations. (*Id.* at Pg. ID 152.) Additionally, based on the testimony and evidence in the record, the Board found that "Beaumont has submitted adequate documentation that is auditable to support the incremental clinical training costs that it incurred for [fiscal years] 2005 and 2006." (*Id.* at Pg. ID 152–53.) It similarly found that Beaumont had adequately supported $50,000 in incremental costs for two employees who worked in support of the clinical training program, though it noted that it had insufficient evidence to apportion the amount between the two. (*Id.* at Pg. ID 153–54.) The Board ordered that the MAC allow $361,001 and $496,835 in pass-through costs for 2005 and 2006, respectively, and that it apportion the salaries of the two claimed employees up to a cap of $50,000 per year. (*Id.* at Pg. ID 154.)

The MAC timely requested a review of that decision by the CMS Administrator. (*Id.* at Pg. ID 118.) The CMS Administrator, on behalf of the Secretary, reversed the Board. (*Id.* at Pg. ID 110.) On review, the Administrator noted that the issue before it was "whether [Beaumont] submitted sufficient documentation for its non-Provider-operated nurse clinical training program costs to support pass-through reimbursement for fiscal years (FYs) 2005 and 2006." (*Id.*) The Administrator concluded that Beaumont had not done so. In particular, after setting out the relevant statutory and regulatory

8

background, the Administrator found "that [Beaumont] did not maintain contemporaneous records to support its claimed FY 2005 and 2006 incremental costs associated with providing clinical training to nursing students." (*Id.* at Pg. ID 114.) Instead, according to the Administrator, Beaumont had improperly relied on "nothing more than estimates as to nursing and administrative staff time and salaries," none of which had been provided to the MAC during the audits at issue. (*Id.* at Pg. ID 115.) The Administrator finally found that Beaumont had improperly relied on non-contemporaneous information to establish the costs related to its two claimed employees, and the Board had therefore wrongly ordered the MAC to apportion $50,000 as to them. (*Id.* at Pg. ID 115–16.)

The Administrator's final decision constitutes the final decision on behalf of the Secretary. Beaumont timely appealed that decision to this court.

## II. STANDARD

The parties submitted a joint statement on the standard of review in this action. (Dkt. #13.) They agree that because Beaumont seeks judicial review of a final agency decision by the Secretary of the Department of Health and Human Services, the court's review is governed by 42 U.S.C. § 1395oo(f)(1). Under that provision, the court reviews the Secretary's decision in accordance with the Administrative Procedure Act ("APA").

As relevant here, the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be — (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "(E) unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(A), (E).

9

The court's review under an arbitrary and capricious standard is a narrow one. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court "is not to substitute its judgement for that of the agency." *Id.* The agency, however, must still "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation omitted). When a case involves an agency's interpretation of its own regulations, the court gives substantial deference to that interpretation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

As to the agency's factual findings, the court reviews for substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

### III. DISCUSSION

A reviewing court affords deference to an agency's interpretation of its own ambiguous regulation. *See Auer v. Robbins*, 519 U.S. 452, 461–62 (1997). But broad deference is unwarranted in some circumstances, such as when the agency's interpretation is "plainly erroneous or inconsistent with the regulation." *Id.* at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). Deference may also be withheld where there is evidence that the agency's interpretation "does not reflect the [agency's] fair and considered judgment." *Id.* at 462; *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). "This might occur when the agency's interpretation conflicts with a prior interpretation, or when it appears that the interpretation is nothing more than a convenient litigating

position, or a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack." *SmithKline*, 567 U.S. at 155 (internal quotations and alterations omitted).

According to Beaumont, this case is precisely the type of case at issue in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)—that is, a case in which the agency's interpretation of its ambiguous regulation should not be afforded the deference it would normally be due. In *SmithKline*, the plaintiffs were pharmaceutical sales representatives; they brought suit against their employer, SmithKline Beecham, on the basis that they had been improperly denied overtime as "outside salesmen," a category of employees not subject to the overtime payment requirements of the Fair Labor Standards Act ("FLSA"). The district court granted summary judgment to SmithKline on the basis that the plaintiffs were outside salesmen, and the Ninth Circuit affirmed.

The preliminary question before the Court in *SmithKline* was whether to grant deference to a Department of Labor ("DOL") interpretation of its own regulation defining "outside salesman." 567 U.S. at 153–54. According to the DOL interpretation, advanced for the first time in an *amicus* brief in another case, the *SmithKline* plaintiffs were improperly designated as outside salesmen. *Id.* at 153.

The Court disagreed. Answering the preliminary question, the Court found that the DOL's interpretation was due no deference under *Auer*. Citing the "unfair surprise" resulting from the DOL's sudden about-face on its interpretation of the regulation, the Court noted that the DOL had never initiated enforcement actions in the industry as to pharmaceutical representatives—despite the industry's longstanding treatment of such

11

representatives as outside salesmen. *SmithKline*, 567 U.S. at 157–58. So, too, did the Court note that the DOL's interpretation would "impose potentially massive liability . . . for conduct that occurred well before that interpretation was announced." *Id.* at 155–56. The Court summarized: "To defer to the agency's interpretation in this circumstance would seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *Id.* at 156 (alteration original) (quoting *Gates & Fox Co. v. Occupational Safety & Health Review Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986)).

The court here agrees with Beaumont that, under the reasoning in *SmithKline*, the Secretary's interpretation of its regulations in this case (42 C.F.R. § 413.24(c) and 42 C.F.R. § 413.20) are due no deference. The Administrator's decision makes clear that it interpreted these regulations to include a new requirement: that the records be "contemporaneous" with the incurred costs. This requirement does not appear in the text of the regulations, but the Administrator nevertheless read it in; after quoting the regulatory language, the Administrator found "that [Beaumont] did not maintain *contemporaneous* records to support its claimed FY 2005 and 2006 incremental costs." (AR, Dkt. #8 Pg. ID 114 (emphasis added).) The Administrator similarly noted that "[t]he record further shows that [Beaumont] did not keep *contemporaneous* records capable of being verified and audited." (*Id.* at Pg. ID 115 (emphasis added).)

Nor is it apparent from the Secretary's enforcement of these regulations—at least as it relates to Beaumont—that it had ever interpreted the regulation to require "contemporaneous" records before. Though the Secretary skirts the issue in briefing (*see, e.g.*, Dkt. #17 Pg. ID 1310–12), he nowhere challenges head-on Beaumont's

assertion that it was asked in 2010 to provide documentary information, contemporaneous with events of years earlier, and of a kind it had never before been asked to provide. Indeed, the MAC itself noted that in prior years, Beaumont's costs for the clinical training program had been approved based on Beaumont's own calculations, which "calculated [the number] of students, approximated [the number] of RNs[,] and estimated the RN salaries." (AR, Dkt. #8-2 Pg. ID 802; *see also id.* at Pg. ID 790.) Based on this 17-year history of non-enforcement of a more specific contemporaneous documentation standard, Beaumont would reasonably conclude that the data it did provide were entirely "adequate cost data" under the regulations. This is especially true in light of the regulation's requirement that, "[i]n order to provide the required cost data and not impair comparability, financial and statistical records should be maintained in a manner *consistent from one period to another*." 42 C.F.R. § 413.24(c) (emphasis added).

The record also reveals the "potentially massive liability" Beaumont faces "for conduct that occurred well before that interpretation was announced." *SmithKline*, 567 U.S. at 155–56. The Board's order, if not reviewed, would have resulted in reimbursements to Beaumont in the hundreds of thousands of dollars—and the Board itself noted that its order was a conservative one. Read generously, the record reveals that the earliest point at which the Secretary arguably set forth this "contemporaneous documentation" requirement was 2010, when the MAC required new documentation for the 2005 and 2006 fiscal years. Such an interpretation would present massive liabilities for Beaumont for conduct—or, accepting the Secretary's interpretation, lack of conduct—that occurred years before.

In sum, despite approving for 17 years pass-through treatment of incurred costs based on Beaumont's calculations, the Secretary now seeks to hold Beaumont to a standard never before imposed, requiring that records maintained by Beaumont be created "contemporaneously" to the costs incurred. Such a requirement does not appear in the text of the regulations, is contrary to the Secretary's longstanding practice, and—unless voided—would result in just the sort of "unfair surprise" that concerned the *SmithKline* Court. Under these circumstances, the Secretary's interpretation of these regulations as it relates to Beaumont may not be afforded the deference generally granted.

The Secretary resists this conclusion. He argues that there was no new "interpretation" of the regulations; the MAC and the Secretary were simply "enforcing longstanding Medicare statutes, regulations, and subregulatory guidance." (Dkt. #17 Pg. ID 1306.) But this argument ignores *SmithKline*. The regulations themselves may have remained constant, but—as this case illustrates—the Secretary's enforcement of them has not. The Secretary offers three reasons to distinguish this case from *SmithKline*— three reasons that, he argues, the court should disregard the unfair surprise and massive liabilities it proposes to impose on Beaumont: (1) "it is not feasible for the Secretary to list every type of support a provider might maintain or an auditor might request," (2) "given the scale of Medicare, not every line item can be fully reviewed each year," and (3) "[e]ven if the auditor does not request support, the provider must maintain documentation to substantiate its actual costs incurred." (Dkt. #17 Pg. ID 1307–08.) Each of these points may be—indeed, is likely—true. But they do not overcome the court's conclusion that the Secretary's interpretation requiring contemporaneous

recordkeeping, advanced as to Beaumont for the first time in 2010, should not be afforded deference under *Auer*.

For 17 years, the Secretary deemed, either affirmatively or by implication, that the information supplied by Beaumont constituted "adequate cost data" such that Beaumont was entitled to pass-through reimbursement. Even the Secretary does not suggest that Beaumont failed to maintain at least *some* documentation to substantiate the costs that it incurred; rather, it quibbles about the *quality* and *sufficiency* of that documentation in light of the regulatory requirements and its decision in 2010 to further scrutinize Beaumont's 2005/06 submissions.

At this point, the court concludes that the Secretary's interpretation of 42 C.F.R. § 413.24(c) and 42 C.F.R. § 413.20 are not due deference under *Auer*.

The parties have not, however, provided the court with sufficient guidance as to how to proceed past this point. The Supreme Court, after determining that the regulation at issue in *SmithKline* was not entitled to deference, undertook its own interpretation of the regulation. *See* 567 U.S. at 159. But the parties have not briefed the question of whether such a court-originated analysis would be appropriate here. Beaumont has attempted to answer the "what next" question, but unfortunately misses the mark. According to Beaumont, the Secretary's decision should be given no deference under *SmithKline* and the court should therefore enter judgment in Beaumont's favor. But Beaumont provides no analysis as to how the court should interpret the regulations at issue, except to say that contemporaneous time studies are not required. Neither party, in fact, has set forth any argument as to just what *is* required. It seems to the court that the parties have devoted insufficient time to analyzing what it means, under the

15

regulations, to be "capable of being audited," or "in sufficient detail to accomplish the purposes for which it is intended." And though they argue about the reliability and merit of Beaumont's presented evidence, neither party actually subjects Beaumont's submissions to the relevant regulatory standards in a meaningful way.

The court, in other words, lacks briefing on how it should analyze these regulations (and whether Beaumont has satisfied them) after concluding that it shall not afford deference to the Secretary's interpretation. Perhaps remand is warranted. *See, e.g.*, *Cove Assocs. Joint Venture v. Sebelius*, 848 F. Supp. 2d 13, 30 (D.D.C. 2012). Perhaps time for settlement discussions outside the purview of the court is more apt. The parties have not addressed any such eventualities.

Given the importance of the matters presented herein, the court will give the parties an opportunity to be heard on next steps.

### IV. CONCLUSION

The parties have made significant headway in moving this case forward, but more is needed before the court can enter judgment. Accordingly,

IT IS ORDERED that Plaintiff William Beaumont Hospital – Royal Oak's Motion for Judgment (Dkt. #15) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Secretary of Health and Human Service's Motion for Judgment (Dkt. #17) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the parties meet and confer regarding a proposed path forward in this case. The court will hold a telephone conference on **April 25, 2018 at 4:00 p.m.** and the parties will be expected report the status of their discussions at that time. In the event that the parties submit a proposed stipulated

judgment, order of remand, or other case closing document before then, the court will cancel the telephone conference. If the telephone conference proceeds, the court anticipates imposing the following briefing schedule after the conference, unless counsel persuades the court of some other appropriate course:

Plaintiff shall submit to the court a renewed motion for judgment addressing the issues identified herein no later than **April 30, 2018**. Defendant's combined response and cross motion addressing the issues identified herein shall be due no later than **May 21, 2018**.[4] Plaintiff's response shall be due no later than **June 4, 2018**. Defendant's optional reply shall be due no later than **June 11, 2018**.

IT IS FURTHER ORDERED that the Defendant listed on the docket in this action be changed to Thomas E. Price, M.D., Secretary, Department of Health and Human Services.

                                                                       s/Robert H. Cleland                 /
                                                                       ROBERT H. CLELAND
                                                                       UNITED STATES DISTRICT JUDGE

Dated: March 29, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 29, 2018, by electronic and/or ordinary mail.

                                                                       s/Lisa Wagner                      /
                                                                       Case Manager and Deputy Clerk
                                                                       (810) 292-6522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\16-13528.BEAUMONT.cross.motions.judgment.RHC.KNP2.docx

---

[4] Defendant, as was properly done in the initial briefing, should note near the document heading that the response and cross motion are combined at the direction of the court.