## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

WILLIAM BEAUMONT HOSPITAL —
ROYAL OAK,

      Plaintiff,

v.                                   Case No. 16-13528

THOMAS E. PRICE, Secretary, Department
of Health and Human Services,

      Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT, DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT, AND REMANDING THE CASE TO THE DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Plaintiff William Beaumont Hospital – Royal Oak sues Defendant Thomas E. Price, Secretary of the Department of Health and Human Services, to receive reimbursement through Medicare for nursing school education costs. (ECF No. 1.) Plaintiff claims that Defendant's decision to withhold payment to Plaintiff was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by substantial evidence under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A), (E). (*Id.*, PageID.11-13, ¶¶ 56-67.) The court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the court will grant Plaintiff's motion for judgment and deny Defendant's motion for judgment.[1] The case will be remanded to the Department of Health and Human Services.

_____

[1] The court will also order that the name of Defendant Secretary be changed on the docket. The currently listed name is Thomas E. Price. However, the Secretary is

## I.   BACKGROUND

The court detailed the facts of this case in its March 29, 2018 order denying without prejudice Plaintiff's and Defendant's prior motions for judgment. (ECF No. 22.) The court will not repeat those facts verbatim but will provide a general overview and discuss the facts that are most relevant.

Plaintiff, a hospital in Royal Oak, Michigan, provided education and training opportunities to nursing students. The Medicare system compensates Plaintiff for expenses incurred in training nursing students. Health-care providers such as Plaintiff receive reimbursement for "the clinical training of students enrolled in an approved nursing or allied health education program that is not operated by the provider." 42 C.F.R. § 413.85(g).

Regulations detail the requirements of receiving Medicare payments. Those regulations lie at the heart of the current dispute. "The principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for the proper determination of costs payable." 42 C.F.R. § 413.20(a). In order to receive compensation, a provider must supply "adequate cost data" that is "based on [its] financial and statistical records" and is "capable of verification by qualified auditors." 42 C.F.R. § 413.24(a). In addition:

> Adequate cost information must be obtained from the provider's records to support payments made for services furnished to beneficiaries. The requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended. Adequate data capable of being audited is consistent with good business concepts and effective and efficient management of any organization,

now Alex M. Azar II. Both parties list Secretary Azar as Defendant in their motions. (ECF No. 33, PageID.1421; ECF No. 34, PageID.1456.)

whether it is operated for profit or on a nonprofit basis. It is a reasonable expectation on the part of any agency paying for services on a cost-reimbursement basis. In order to provide the required cost data and not impair comparability, financial and statistical records should be maintained in a manner consistent from one period to another. However, a proper regard for consistency need not preclude a desirable change in accounting procedures if there is reason to effect such change.

42 C.F.R. § 413.24(c). Plaintiff is required to provide adequate proof of the costs that were incurred only because Plaintiff trained nursing students. Medicare Program; Payment for Nursing and Allied Health Education, 66 Fed. Reg. 3358-01, 3368-69 (Jan. 12, 2001). Stated another way, Plaintiff cannot receive compensation for expenses Plaintiff would have incurred regardless of the training. *Id.*

From 1988 through 2004, Plaintiff provided information of nursing student expenses in satisfaction of the "adequate cost data" requirement. 42 C.F.R. § 413.24(a). However, in 2010, Plaintiff was notified by an agency representative tasked with reviewing Plaintiff's initial request for compensation, called a Medicare Administrative Contractor ("MAC"), that no reimbursement would be given for the 2005 and 2006 fiscal years.

Plaintiff contested that finding internally at the Department of Health and Human Services. The first appeal, before the Provider Reimbursement Review Board ("Board"), was successful for Plaintiff. The Board conducted an evidentiary hearing and found that the MAC improperly demanded contemporaneous "time studies." (ECF No. 8, PageID.153.) The Board reasoned that time studies were not included in the "adequate cost data" requirement and "the first time the Medicare Contractor requested time studies from Beaumont was in 2010, well after the close of the fiscal years at issue." (*Id.*) The Board went on to detail Plaintiff's evidence of expenses, ultimately concluding

that Plaintiff was owed $361,001 for 2005 and $496,835 for 2006, and was owed up to $50,000 per year for administrative and clerical support staff. (*Id.*, PageID.152-54.) The Board noted that these expense amounts were conservative. (*Id.*)

The Board's decision was appealed to the last level of internal agency review, the Administrator for the Centers for Medicare and Medicaid Services ("CMS"). The Administrator found that Plaintiff had not provided documentation that the MAC had requested, that Plaintiff had presented evidence that was not contemporaneous to fiscal years 2005 and 2006, that Plaintiff had not provided adequate job descriptions of Plaintiff's employees, and that the use of time studies was "an obvious tool" to calculate costs and disagreed with the Board's decision that time studies were not required. (*Id.*, PageID.114-16.) The Administrator reversed the Board. (*Id.*) Plaintiff was again left with no compensation.

Plaintiff filed the instant lawsuit in 2016. (ECF No. 1.)  Plaintiff challenged the agency's final decision to deny Plaintiff's requested Medicare reimbursements. From May 2017 to August 2017, the parties briefed cross-motions for judgment pursuant to Federal Rule of Civil Procedure 52(a)(1). (ECF Nos. 15, 17, 18, 21.) The court issued an opinion on March 29, 2018, which found that Defendant's interpretation of the relevant Medicare regulations, requiring that Plaintiff provide "contemporaneous records" which had never been previously asked for, was not entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461–62 (1997). The court did not go on to reach a final decision in the case due to the parties' inadequate briefing.

4

The parties attempted to reconcile their differences and settle but were unable to reach an accord. Plaintiff and Defendant have now renewed their motions for judgment. (ECF Nos. 33, 34.)

## II. STANDARD

The parties submitted a joint statement on the standard of review in this action. (ECF No. 13.) They agree that because Beaumont seeks judicial review of a final agency decision by the Secretary of the Department of Health and Human Services, the court's review is governed by 42 U.S.C. § 1395oo(f)(1). Under that provision, the court reviews the Secretary's decision in accordance with the APA.

Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be — (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "(E) unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(A), (E). Plaintiff seeks relief under both "arbitrary and capricious" and "substantial evidence" review. (ECF No. 1, PageID.12, ¶ 61.)

The court's analysis under an "arbitrary and capricious" standard is a narrow one. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court "is not to substitute its judgement for that of the agency." *Id.* The agency, however, must still "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (quotations omitted). For instance, "[a]n agency decision is 'arbitrary and capricious' when the agency . . . has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kentukians for the Commonwealth v. U.S. Army Corps of Engineers*, 746 F.3d 698, 706 (6th Cir. 2014) (citations omitted).

Under "substantial evidence" review, the court will accept agency findings if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted).

## III. DISCUSSION

The court finds itself in the dense thicket of administrative healthcare law. The administrative record spans hundreds of pages and the parties have now submitted a total of eight briefs. From the court's review of the agency decisions, the administrative record, and the parties' arguments, the court finds several seminal facts that are determinative in this dispute.

First, Plaintiff had complied with the regulations requiring "adequate cost data" for seventeen years prior to 2005 using what amounts to the same type of records it had provided Defendant in 2005 and 2006. 42 C.F.R. § 413.24(a). The court ruled in March 2018 that "[f]or 17 years, [Defendant] deemed, either affirmatively or by implication, that the information supplied by [Plaintiff] constituted 'adequate cost data' [under 42 C.F.R. § 413.24(a)] such that [Plaintiff] was entitled to pass-through reimbursement [for the training costs of prospective nurses]." (ECF No. 22, PageID.1378.) Plaintiff's Director of Reimbursement testified that Plaintiff was "paid by Medicare for [the] pass-through costs since 1988." (ECF No. 8, PageID.250.) Defendant has admitted that "[Plaintiff's] cost reports from 1989 to 2004 [were] settled and that pass-through costs for nurse clinical

6

training were allowed for each year from 1989 to 2004." (ECF No. 17, PageID.1266, ¶ 32.) The MAC's cost report specialist, who was actively involved in this dispute on behalf of Defendant, was asked directly: "So [Plaintiff] gives [Defendant] what they've always had, and now the auditors in 2010 say this [documentation] is not adequate. Right?" (ECF No. 8, PageID.321-22, 339.) The specialist responded: "Yeah." (*Id.*, PageID.339.) The Chairman of the Board, employed by Defendant to oversee Medicare reimbursement disputes, synthesized the evidence and said Plaintiff "just went on [its] merry way doing whatever [it] did in the past, and no one [representing the agency] said anything to [Plaintiff]." (*Id.*, PageID.350-51.) Defendant presents no substantial argument in opposition.

Second, Plaintiff provided the agency with contemporaneous records for 2005 and 2006. Plaintiff compiled extensive data sheets containing student names, the students' nursing schools, the students' course instructors and contact information, the semester in which the students performed clinical training, the course numbers at the nursing schools, the dates that the students received their clinical training, the hours per day that students received clinical training, the units within Plaintiff's hospital where students received clinical training, and the nurse managers of each unit. (ECF No. 8-1, PageID.536-92.) The employee who entered this information for Plaintiff was asked directly: "[D]id you input the data into the database in 2005 and 2006?" (ECF No. 8, PageID.268.) The employee responded: "Yes, that is correct." (*Id.*) The employee then explicitly confirmed that the data was compiled "contemporaneous to when the students were in the program." (*Id.*) Defendant admits that Plaintiff's submission of

contemporaneous records is consistent with record testimony and offers no substantive evidence to the contrary. (ECF No. 17, PageID.1268, ¶ 39.)

Third, the MAC, as affirmed by the Administrator, sought out and demanded contemporaneous time studies to prove the nursing student expenses for 2005 and 2006. The court ruled in its March 2018 opinion that Plaintiff "was asked in 2010 to provide documentary information, contemporaneous with the events of years earlier, and of a kind it had never before been asked to provide." (ECF No. 22, PageID.1376.) Plaintiff's Manager of Nursing Education and Research Department testified that in 2010, she was questioned by one of Defendant's representatives at a MAC about reimbursements in 2005 and 2006. (ECF No. 8, PageID.293.) The manager was able to answer questions about student absences, but was unexpectedly asked "whether or not [Plaintiff] kept any time records before 2010?" (*Id.*) The manager testified that it was "the first time" being asked for time studies. (*Id.*, PageID.294.) The MAC's cost report specialist, representing the MAC and Defendant's stance on the issue, testified that Plaintiff's documentation was inadequate and said that "if [Plaintiff] had a time study . . . that time study would [and] should be verifiable." (*Id.*, PageID.324.)

The MAC defended the agency's decision before the Board by "contend[ing] that [Plaintiff] did not provide complete time sheets that were contemporaneous with the period under appeal." (*Id.*, PageID.152.) The Board continued to find that "it is unreasonable for the [MAC] to require Beaumont to have time studies . . . and not accept alternative documentation." (*Id.*) The Administrator in no way contested this finding, and in fact went further and explicitly disagreed with the Board's ruling regarding contemporaneous time studies. (*Id.*, PageID.115-16 ("The Board disagreed with the

MAC's contention that [Plaintiff] did not provide time studies that were contemporaneous with the period under appeal. The Administrator does not agree.").) The Administrator reasoned that "time studies are an obvious tool," on the way to finding that Plaintiff had not met its burden of proving its training costs. (*Id.*, PageID.116.)

Fourth, Plaintiff attempted to comply with the agency's new-found demand for time studies by constructing data from other years and employee testimony and experience, which the agency then claimed was not contemporaneous and insufficient to establish "adequate cost data." 42 C.F.R. § 413.24(a). Nurses who trained students for Plaintiff established an estimate that they worked "no less than 1.5 hours per 8-hour shift training nursing students . . . over and above the nurses' regular responsibilities on a shift." (ECF No. 22, PageID.1369-70 (The court's March 2018 opinion explaining uncontested facts).) That number was then used to calculate the final reimbursement amounts requested, $414,826 for 2005 and $550,600 for 2006. (*Id.*; ECF No. 8, PageID.243.) Plaintiff's contemporaneous records were used to tabulate the total number of student hours spent at Plaintiff's hospital. (ECF No. 8, PageID.243 (testimony of Plaintiff's Director of Reimbursement who performed the calculations); ECF No. 8-1, PageID.533-34, 594-95 (2005 and 2006 Cost Reports).) Then, the number of student hours was converted to days. (ECF No. 8, PageID.243.) The 1.5-hour estimate was multiplied by the total number of days to calculate time spent. (*Id.*) Finally, time spent was multiplied by nurse-educator salaries, computed using 2005 and 2006 data, to come to final amounts. (*Id.*, PageID.246-47 (testimony on the analysis and confirmation

of employee title and seniority); ECF No. 8-1, PageID.596-99 (2005 and 2006 Nursing Payroll Structure sheets).)

A member of Plaintiff's Administrative Management Team, who also provided clinical training to nursing students, testified that she met with a group of other clinical nurse trainers and "looked at all the different tasks that a nurse working a unit with a student nurse . . . would be doing . . . we listed [them] and we came up with . . . how much time would it take for these tasks." (ECF No. 8, PageID.302-03.) The nurse continued: "[W]e really felt that the hour and a half time frame that we could conservatively say, and . . . without a doubt, the nurses spend . . . with that student nurse going through, teaching, educating, answering questions." (*Id.*) The nurse explained in detail specific tasks nurse trainers were asked to perform and how much time each task would take. Examples include discussing morning reports for at least seven to ten minutes, discussing morning medications given to patients for at least twenty minutes, and discussing physical assessments of patients for fifteen to twenty minutes. (*Id.*, PageID.307, 308.) Five registered nurses, employed by Plaintiff in 2005 and 2006 to train nursing students, submitted affidavits estimating "an average of at least 1.5 hours per day" spent educating students. (ECF No. 8-1, PageID.527-31.) Plaintiff relied on a similar synthesis of testimony, experiences, estimates, and data analysis to conclude that $50,000 for both 2005 and 2006 was expended for hiring administrative and clerical support staff, used to coordinate clinical programs for nursing students. (ECF No. 8, PageID.1195-96 (Manager of Plaintiff's Nursing Education Department explaining how the $50,000 amount was tabulated); *see also id.*, PageID.135 (the Board citing the record and describing the estimate as "conservative").)

Plaintiff also pointed out that it began collecting contemporaneous time studies from 2010 to 2012 after the agency demanded time studies for 2005 and 2006. (ECF No. 15-1, PageID.1237-49.) The time studies for years following 2006 yielded a higher number of hours spent per day by nurses training students than the amounts sought for 2005 and 2006, despite the fact that there is no evidence that the operation and expenditures of Plaintiff's nurse training program changed in any substantial degree. (ECF No. 8, PageID.153 (the Board describing calculations to reach higher hours-per-day amounts for 2010 to 2012); ECF No. 17, PageID.1278, ¶ 98 (Defendant admitting that "the inference [of higher hours-per-day training] is consistent with the document," but denying relevance).) This confirmed the characterization of Plaintiff's 1.5 hours calculation as conservative.

Nonetheless, the Administrator rejected the entirety of Plaintiff's evidence that was amassed in response to the agency's demand for contemporaneous time studies. The Administrator ruled categorically that Plaintiff failed to "keep contemporaneous records capable of being verified and audited." (ECF No. 8, PageID.115.) Specifically, the Administrator found that "the 1.5 hours per day that the nursing staff devoted to clinical training of nursing students was an estimate and that [Plaintiff] did not track the time nurses spent." (*Id.*)

Fifth, Plaintiff was informed by the agency of the new time-studies requirement only in 2010, at least four years after the relevant records were supposed to be gathered and presented. A member of Plaintiff's Administrative Management Team who helped develop Plaintiff's cost estimates as a substitute for contemporaneous time sheets was asked whether "anyone affiliated with Medicare . . . asked for time records

at any time before 2010." (*Id.*, PageID.303.) Plaintiff's employee responded: "No, I am not aware of that." (*Id.*) Plaintiff's Manager of Nursing Education and Research Department was asked: "Are you aware of any [MAC] or anyone affiliated with Medicare asking [Plaintiff] to keep any time records relating to clinical nursing education before 2010?" (*Id.*, 293-94.) The manager replied: "No, sir. That's the first time this situation has ever arose." (*Id.*, PageID.294.) The Board, in its decision granting Plaintiff reimbursement, noted that "the first time the [MAC] requested time studies from [Plaintiff] was in 2010, well after the fiscal years at issue," and found that the agency's requirement that Plaintiff have complete time studies years later was unreasonable. (*Id.*, PageID.133.) The Administrator included no analysis refuting this finding and instead denied reimbursement, reasoning that Plaintiff lacked time studies and relied on non-contemporaneous information to produce sufficiently detailed data equivalent to time studies. (*Id.*, PageID.115-16.)

Sixth, after Plaintiff was made aware that contemporaneous time sheets were de facto mandated in order to receive Medicare compensation in 2010, Plaintiff complied adequately and fully. Plaintiff submitted time studies in order to receive compensation for nursing student training from 2010 to the last year of the administrative record, 2012. (ECF No. 15-1, PageID.1237-49; ECF No. 17, PageID.1278, ¶ 97.) Plaintiff's Director of Corporate Reimbursement submitted an affidavit stating that the agency approved Plaintiff's request for costs for the years 2010 to 2012. (ECF No. 15-1, PageID.1235.)

Although the agency's approval is not itself in the administrative record, Defendant admits this to be the case.[2] (ECF No. 17, PageID.1279, ¶ 99.)

### i. Time Studies and Plaintiff's Contemporaneous and Non-Contemporaneous Records

With all these facts in mind, the court finds that the agency's decision to withhold payment to Plaintiff for the 2005 and 2006 fiscal years arbitrary, capricious, and "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The court has found that the agency's interpretation of its own regulations was due no deference, as it effectively inserted into Medicare regulations requiring "adequate cost data" for nurse training compensation a "contemporaneous" element for the acceptability of time studies and equivalent documentation. 42 C.F.R. § 413.24(a). (ECF No. 22.) The court reasoned that the Administrator's decision to deny compensation, due to Plaintiff's attempt to reconstruct records equivalent in detail and substance to time sheets because they were not contemporaneous, was detached from any reference to "the text of the regulations, [was] contrary to [Defendant's] longstanding practice, and—unless voided—would result in . . . unfair surprise." (ECF No. 22, PageID.1377 (citations removed).) When an agency is not given deference, the

---

2   The court finds consideration of subsequent approvals by the agency, after Plaintiff began using time sheets, informative and non-prejudicial to the agency. The Sixth Circuit, upon review of administrative law cases, found that "a reviewing court may consider materials supplementary to the administrative record in order to determine the adequacy of the government's decision, even when the court's scope of review is limited to the administrative record." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1427 (6th Cir. 1991). Approvals for the years 2010 to 2012 do not concern the intricate details of Plaintiff's 2005 and 2006 requests for reimbursement. They do not serve to second-guess the agency's decision in a *de novo* review, but merely confirm a well-evidenced theory that the agency denied cost reimbursements to Plaintiff for fiscal years 2005 and 2006 because Plaintiff lacked contemporaneous time sheets.

court should accept the agency's interpretation of its own regulations only "to the extent it has the 'power to persuade.'" *Kisor v. Wilkie*, 139 S.Ct. 2400, 2414 (2019) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012)). The court considers, as it may do with any party, "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Christopher*, 567 U.S. at 159 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001).

As the Supreme Court reasoned in the Court's recent decision on administrative deference, *Kisor v. Wilkie*, 139 S.Ct. 2400 (Roberts, C.J.), the list of factors a court must consider in determining deference and the factors a court considers in being persuaded "have much in common." *Id.* at 2424. In fact, the Chief Justice, as the deciding vote in the case, found that "cases in which *Auer* deference is warranted largely overlap with the cases in which it would be unreasonable for a court not to be persuaded." *Id.* at 2425. Conversely, cases in which deference is *not* warranted largely overlap with cases in which the agency's interpretations are *not* persuasive. That is the case here.

Defendant approved Plaintiff's filings of cost data for seventeen years without issue. (ECF No. 8, PageID.321-22, 339; ECF No. 17, PageID.1266, ¶ 32.) Defendant then, in hindsight—the court pauses briefly to note the lack of contemporaneity in Defendant's action here—scored Plaintiff's submissions for lacking time studies, and being bereft of contemporaneous data to compensate for a lack of time studies. Assuming that the agency had "thoroughly considered" Plaintiff's cost data for seventeen years, it is completely reasonable for Plaintiff to assume that "adequate cost data" requirements did not include the need to provide contemporaneous time studies

or contemporaneous information equivalent to time studies. *Christopher*, 567 U.S. at

159; 42 C.F.R. § 413.24(a). Defendant's strong protests against this finding

notwithstanding, Defendant is unable to explain how it found Plaintiff's cost data

information to be adequate for almost two decades only now to claim that the

information was clearly inadequate, apparently all along. Unless Defendant intends to

say that the agency itself was serially in violation of its own regulations over the course

of seventeen years (twenty-two if one considers that Defendant notified Plaintiff directly

only in 2010), it is very hard for the court to accept the claim that Plaintiff was violating

regulations in 2005 and 2006.

The agency's change of heart, at least four years after the fact, is patently

inconsistent with "earlier . . . pronouncements" regarding Plaintiff's compliance.[3]

*Christopher*, 567 U.S. at 159. Defendant has presented no ruling or decision that

contradicted its years of established practice of interpreting Plaintiff's filings as

"adequate cost data." 42 C.F.R. § 413.24(a). Instead, the evidence shows that

_____

[3]     Affirming an application for reimbursement as containing "adequate cost data,"
which is the agency's tasked responsibility, is a position and a pronouncement
regarding Plaintiff's compliance, especially considering the fact that Medicare
reimbursement regulations explicitly contemplate MACs, who make initial decisions on
reimbursement, as "important source[s] of consultative assistance to providers." 42
C.F.R. § 413.24(a); 42 C.F.R. § 413.20(b). Documentation from the agency accepting
Plaintiff's cost data is a "formal declaration of opinion," under the definition of
"pronouncement." Similarly, the agency's denial of compensation for the 2005 and 2006
fiscal years are positions that must be compared to prior and subsequent positions. The
Supreme Court by no means rejected this finding in *Thomas Jefferson Univ. v. Shalala*,
515 U.S. 504, 515 (1994), as Defendant claims. *Shalala* merely states that an agency
*may* change its mind on the construction of a regulation and not be *barred* from
receiving deference. While the Court has subsequently pared back deference when "an
agency construction conflict[s] with a prior one," the *Shalala* decision has nothing to do
with whether prior agency action constitutes a "pronouncement" in terms of persuasion
analysis. *Kisor*, 139 S.Ct. at 2418. The court ruled in March 2018 that Defendant's
interpretation of Medicare regulations is due no deference. *See infra* note 4.

Defendant approved Plaintiff's applications for reimbursement without major concern. (ECF No. 8, PageID.321-22, 339; ECF No. 17, PageID.1266, ¶ 32.) Even beyond Defendant's interpretation with specific regard to Plaintiff's own documentation, Defendant has presented no agency interpretation or application, before 2005 or since, that explicitly requires providers to supply contemporaneous time studies to prove nurse training costs. Instead, Defendant has pointed to guidelines that required documentation of reasonable costs, capable of being audited, and agency decisions requiring other regulated entities to provide other types of contemporaneous documentation in different and unique factual scenarios.[4] Centers for Medicare & Medicaid Services, The Provider Reimbursement Manual § 2304 (2014); Doctor's Hospital v. Blue Cross Blue Shield Association/CGS Administrators, LLC, 2012 WL 6625076 (Dept. of Health and Human Serv. Sep. 11, 2012) (an unpublished final decision concerning Medicare reimbursement for patient bad debts); Parkland Memorial Hospital v. Blue Cross Blue Shield Association/Blue Cross Blue Shield of Texas (Dept. of Health and Human Serv. Nov. 29, 1993) (a final agency decision excluded from online legal databases, included on page 784 of Commerce Clearing House, Inc.'s Medicare and Medicaid Guide, New Developments, December 1993 to June 1994, and involving bad debt reimbursement);

---

[4]    Defendant also appears to be continuing to contest the court's March 2018 decision denying *Auer* deference. Defendant asserts that the evidence presented in this case is "inapposite to the 'unfair surprise' argument in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)," a decision on which the court relied to deny deference. (ECF No. 34, PageID.1473; ECF No. 22, PageID.1375 ("The court here agrees with [Plaintiff] that, under the reasoning of *SmithKline*, [Defendant's] interpretation of its regulations in this case . . . are due no deference.").) The time to move for reconsideration has passed. E.D. Mich. L.R. 7.1(h) ("A motion for . . . reconsideration must be filed within 14 days after entry of the judgment or order."). Defendant is expected to focus arguments on those relevant to the remaining questions at issue.

16

In Home Health, Inc. v. Blue Cross Blue Shield of California, Iowa, Illinois, and Wisconsin, 1996 WL 887661 (Aug. 4, 1996) (an unpublished final decision regarding Medicare reimbursement for home health services).

None of these sources contained: 1) a requirement for contemporaneous time studies by providers attempting to receive compensation for nurse training costs; 2) findings that contemporaneous information such as student rosters and attendance information was wholly inadequate; or 3) rulings that cost calculations through detailed and well-supported testimony and reconstructed data analysis are barred from consideration because they are not purely contemporaneous.[5] If courts were to accept the agency's contention that Plaintiff should have rummaged through these guidance documents and off-topic internal decisions to infer such affirmative rulings in the context of the agency's acceptance of Plaintiff's cost data for seventeen years, the consistency and predictability of administrative rule of law would be substantially undermined.

Further, the agency does not provide other "factors which give it the power to persuade." *Christopher*, 567 U.S. at 159. A textual analysis of the regulations does not yield a requirement for time studies or a requirement for entirely contemporaneous information. Title 42 C.F.R. § 413.20(a) requires that "providers maintain *sufficient* financial records and statistical data for the proper determination of costs payable." *Id.*

---

[5]     Defendant urges the court that agency sources prove *some* contemporaneous information was required under Medicare regulations. Even if the court were to accept the agency's contention based on unpublished and scattered internal adjudications, it is irrelevant. It is undisputed that Plaintiff did provide contemporaneous records in 2005 and 2006. (ECF No. 8-1, PageID.536-92; ECF No. 17, PageID.1268, ¶ 39.) The agency imposed new requirements years after the fact that rendered Plaintiff's original contemporaneous information inadequate, and then objected when Plaintiff attempted to satisfy the agency's demands with extensive and apparently accurate non-contemporaneous evidence.

(emphasis added). Title 42 C.F.R. § 413.24(a) states that "[p]roviders receiving payment on the basis of reimbursable cost must provide adequate cost data. This must be based on their financial and statistical records which must be capable of verification by qualified auditors." In section (c), 42 C.F.R. § 413.24 provides specifics for what constitutes adequate cost information:

> Adequate cost information must be obtained from the provider's records to support payments made for services furnished to beneficiaries. The requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended. Adequate data capable of being audited is consistent with good business concepts and effective and efficient management of any organization, whether it is operated for profit or on a nonprofit basis. It is a reasonable expectation on the part of any agency paying for services on a cost-reimbursement basis. In order to provide the required cost data and not impair comparability, financial and statistical records should be maintained in a manner consistent from one period to another. However, a proper regard for consistency need not preclude a desirable change in accounting procedures if there is reason to effect such change.

Noticeably, nowhere in the text of the regulations at issue is there a mention of time studies, nor is there a blanket ban on non-contemporaneous information. While Plaintiff was required to maintain and provide accurate and auditable financial data and statistics, there is no indication in the regulatory text that the information Plaintiff did provide: data sheets containing student names, the students' nursing schools, the students' course instructors and contact information, the semester in which the students performed clinical training, the course numbers at the nursing schools, the dates that the students received their clinical training, the hours per day that students received clinical training, the units within Plaintiff's hospital where students received clinical training, and the nurse managers of each unit, supplemented by testimony and affidavits by clinical nurses detailing to the minute the extent and nature of supervisory

responsibilities, the uncontested salaries of nurse practitioners and administrative and clerical support staff, data analytics comparing student hours and employee hours, and subsequent time studies, were all inadequate under Medicare regulations.

The regulations compelling Plaintiff to "maintain" "adequate" records, in their plain meaning, require Plaintiff "to keep in an existing state" records that are "sufficient" to be audited and proven accurate. *Maintain*, Merriam-Webster Dictionary (last visited April 3, 2020), https://www.merriam-webster.com/dictionary/maintain; *Adequate*, Merriam-Webster Dictionary (last visited April 3, 2020), https://www.merriam-webster.com/dictionary/adequate; *Kisor*, 139 S.Ct. at 2419 (requiring that courts use "traditional methods of interpretation to any [regulation], and must enforce the plain meaning those methods uncover," even in instances of deference); *Summit Petroleum Corp. v. E.P.A.*, 690 F.3d 733, 744 (6th Cir. 2012) (performing regulatory interpretation according to "the plain meaning of the text"). This interpretation largely conforms to explanations in the regulations themselves, which state that "the requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended." 42 C.F.R. § 413.24(c). The court sees no reason to conclude that the *only* way to satisfy the "adequate cost" requirement is through contemporaneous time studies and not through other contemporaneous records, supplemented by non-contemporaneous testimony, analysis, and time studies.

Additionally, the regulations specifically request consistency in reporting year to year. "[F]inancial and statistical records should be maintained in a manner consistent from one period to another." 42 C.F.R. § 413.24(c). Here, Defendant's post hoc requirement for contemporaneous time sheets upset seventeen years of consistent

reporting practice on the part of Plaintiff. Although change in accounting procedures is not precluded "if there is reason to effect such change," the evidence on the record shows that the agency did not notify Plaintiff of a change of procedure when Plaintiff sought reimbursement in 2005 and 2006 and did so only in retrospect years later. 42 C.F.R. § 413.24(c).

Defendant points to no binding precedent in conflict with the court's textual interpretation. In fact, from the court's research, neither the Sixth Circuit nor the Supreme Court have interpreted the meaning of "adequate cost data" in the context of 42 C.F.R. § 413.24(a).

Administrative agencies must abide by their regulations. "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Meister v. U.S. Dept. of Agric.*, 623 F.3d 363, 371 (6th Cir. 2010) (finding that a Forest Service land and resource management plan was arbitrary and capricious for violating Forest Service regulations); *see also Clark Reg'l Med. Center v. U.S. Dept. of Health and Human Servs.*, 314 F.3d 241, 249 (6th Cir. 2002) (holding that the Department of Health and Human Service's denial of Medicare reimbursement, in violation of the agency's own regulations, was arbitrary and capricious). Here, Medicare regulations requiring healthcare providers to supply "adequate cost data" for expenses incurred in training nursing students did not include requirements that providers use time studies or contemporaneous records equivalent to time studies. 42 C.F.R. § 413.24(a). The Administrator's decision to deny Medicare reimbursement due to Plaintiff's lack of time studies or contemporaneous information equivalent to time studies was arbitrary, capricious, and "not in accordance with law." 5 U.S.C. § 706(2)(A). (ECF No. 8,

PageID.115-16 (The Administrator's decision: "[Plaintiff] was unable to locate and provide all of the MAC's requested records to substantiate the claimed pass-through costs;" "[Plaintiff] did not keep contemporaneous records capable of being verified and audited;" "The Board disagreed with the MAC's contention that [Plaintiff] did not provide time studies that were contemporaneous with the period under appeal. The Administrator does not agree.").)

### ii.  Plaintiff's Job Descriptions

To the extent the Administrator's decision relied on Plaintiff's failure to provide job descriptions of Plaintiff's administrative and clerical support staff, the court finds such reliance arbitrary and capricious. The Administrator mentioned in one cursory sentence that Plaintiff's calculation of expenses for its administrative and clerical support staff was flawed because "the documentary record does not include any job descriptions or other evidence setting forth the roles and responsibilities of those employed in the nursing education department during time periods under appeal." (ECF No. 8, PageID.116.)

The administrative record shows the opposite. The manager of Plaintiff's Department of Nursing Education and Research provided extensive testimony regarding such job descriptions as they were "from 2005 to 2006." (*Id.*, PageID.277.) For example, the manager described how employees worked in "the placement part of the [nurse training] process." (*Id.*, PageID.278.) "[U]niversities mailed [Plaintiff] requests on paper of classes and students, and gave [Plaintiff] the information as far as the nursing curriculum." (*Id.*, PageID.278.) The universities "would send [Plaintiff] that [information], requesting areas or requested levels and . . . [t]hen we [employees at the Nursing

Education and Research Department] would communicate via mail with the universities and send accept or deny [responses] or changes, make phone calls if there were questions about their placement requests, and communicate with the schools to accept, deny, or place." (*Id.*, PageID.278.) The manager further described additional tasks, such as preparing for nursing student orientation, conducting nursing student orientation, registering nursing students and performing background checks, coordinating the rotations for each student, meeting with students to ensure compliance with agreements and patient confidentiality, and investigating incidents at the hospital involving a nursing student, amongst many other roles. (*Id.*, PageID.278, 280 (describing orientation preparation and management); *id.*, PageID.280-81 (discussing student registration, preparing and completing required forms, and confirming background checks); *id.*, PageID.278, 281 (explaining responsibilities coordinating unit rotations within the hospital); *id.*, PageID.282 (describing investigation and reporting requirements).)

Plaintiff also provided a detailed formal description of the job responsibilities of a Director of Nursing Education and a Manager of Nursing Education and Research, albeit assembled in 2013. (ECF No. 8-1, PageID.458-62.) The agency cited no record evidence to indicate how formal job descriptions in 2013 differed in any substantial degree from those in 2005 and 2006, or why such differences were lacking enough to justify denying Plaintiff *any* reimbursement. (ECF No. 8, PageID.115.) Notably, the Board had no trouble finding that "[Plaintiff] provided a job description for each of these employees." (*Id.*, PageID.135.)

To claim that that Plaintiff failed to provide proof of job descriptions, and to further suggest that this information may make Plaintiff's entire proof of costs for 2005 and

2006 inadequate is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise" and is a decision "that runs counter to the evidence before the agency."  42 C.F.R. § 413.24(a); *Kentukians for the Commonwealth*, 746 F.3d at 706. A decision based on Plaintiff's proof of job descriptions alone would be arbitrary and capricious and a violation of the APA. *Kentukians for the Commonwealth*, 746 F.3d at 706; 5 U.S.C. § 706(2)(A).

### iii. Consistency and Reliance Interests

Even if the agency had properly found Plaintiff's evidence on job descriptions to be lacking, the agency would still have "failed to consider an important aspect of the problem," namely consistency in reporting and reliance. *Kentukians for the Commonwealth*, 746 F.3d at 706. As the court mentioned in its March 2018 opinion, Medicare reimbursement regulations explicitly consider consistency in the manner of reporting nurse training costs year to year. (ECF No. 22, PageID.1376.) "In order to provide the required cost data and not impair compatibility, financial and statistical records should be maintained in a manner *consistent from one period to another*." (*Id.* (emphasis in original) (quoting 42 C.F.R. § 413.24(c)).) In accordance with the regulation, Plaintiff maintained the same records consistently over the course of many years and was given positive responses by the agency. It was the agency, not Plaintiff, who retroactively demanded performance in 2005 and 2006 inconsistent from the previous seventeen years. Although the regulations also say that "a proper regard for consistency need not preclude a desirable change in accounting procedures if there is reason to effect such change," the agency here did not provide any *reason* to effect any *known change* upon Plaintiff's reporting requirements in 2005 and 2006. 42 C.F.R. §

23

413.24(c). The agency denied compensation years after the fact in 2010 with post hoc rationalizations never before given to Plaintiff. Consistency in reporting, as demanded in Medicare regulations, was wrongfully ignored by the agency. *Kentukians for the Commonwealth*, 746 F.3d at 706.

Further, the regulations also contemplate providers such as Plaintiff relying on past decisions of MACs. Title 42 C.F.R. § 413.20(c) states that "[i]n the interpretation and application of the principles of reimbursement, [MACs] will be an important source of consultative assistance to providers." The agency should have considered the fact that MACs had provided Plaintiff with valuable "consultative assistance" by approving Plaintiff's consistent cost reporting for seventeen years prior to 2005. *Id.* In fact, it is possible that ignoring the findings of past reviews by MACs would itself conflict with Medicare regulations. The consistency of prior MAC approvals should have been considered by the agency and was not. *Kentukians for the Commonwealth*, 746 F.3d at 706.

These findings are supported further by the general principle that effective and efficient regulatory regimes rely on predictable and well-understood rules. *See, e.g.*, *Rule of Law*, Black's Law Dictionary (11th ed. 2019) (emphasis added) ("The supremacy of *regular* as opposed to arbitrary power."); *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 240 (1970) ("We fully recognize that important policy considerations militate in favor of continuity and predictability in the law."); *Kimble v. Marvel Entm't, LLC*, 135 S.Ct. 2401, 2409 (2015) (citations removed) (finding that the importance of predictability and respect for reliance interests, in the context of judicial decisions and *stare decisis*, is a "foundation stone of the rule of law"). The APA is

structured to ensure predictability and protect reliance interests, with requirements of notice and comment before final rulemaking and prohibitions on arbitrary and capricious conduct. 5 U.S.C. § 706(2)(A) (statute allowing judicial review of arbitrary and capricious agency action); *Kisor*, 139 S.Ct. at 2414 (citation removed) (denying deference to agency interpretations where the interpretation would "create [an] unfair surprise to regulated parties"); *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015) (citing 5 U.S.C. § 553) (describing detailed requirements of notice, comment, and justification for an agency's preferred interpretation of a statute carry the force of law); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (analyzing an agency decision under arbitrary and capricious review: "[a]n agency may not, for example, depart from a prior policy *sub silento*" and may be required to provide a "detailed justification" when "its prior policy has engendered serious reliance interests"); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 37 (1950), *superseded by statute on other grounds*, 8 U.S.C. § 1101 (describing, soon after enaction of the APA, how the APA was created after "[t]he conviction developed, particularly within the legal profession, that [administrative] power was not sufficiently safeguarded and sometimes put to arbitrary and biased use" without expectation or understanding).

Here, the agency's apparent disregard for years of reliance interest not only undermines Plaintiff's ability to plan for its nursing education programs, it increases the risk and uncertainty of regulated parties in the industry as a whole. Without some degree of respect for the status quo and providers' past expectations, it is hard to see how the agency can effectively implement its weighty responsibilities in administering the nation's Medicare system, including the support of nurse training programs. The

agency should have contemplated how its decision would affect reliance interests. By declining to do so, the agency "failed to consider an important aspect of the problem." *Kentukians for the Commonwealth*, 746 F.3d at 706.

### iv. Remedy

Having found Defendant's decision to deny Plaintiff Medicare reimbursement for nurse training costs for fiscal years 2005 and 2006 arbitrary, capricious, and "otherwise not in accordance with law," the remaining issue is remedy. 5 U.S.C. § 706(2)(A). Plaintiff argues that the court should jump into the deep end of the administrative pool and grant an exact monetary award in its favor. It is true, as Plaintiff points out, that the Board provided detailed reasoning and what appears to be a reasonable calculation for compensation. Nonetheless, it is not the role or expertise of the court to analyze complex Medicare compensation data and determine reasonable reimbursement amounts. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("The reviewing court [of an agency decision] is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."). Congress delegated that duty to Defendant and the Department of Health and Human Services. Thus, the court will remand the case with guidance from this opinion to the Department of Health and Human Services for further determination.

"It is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards." *Cissell Mfg. Co. v. U.S. Dept. of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996); *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 473 (6th Cir. 2004). Plaintiff was not

required to provide time studies or contemporaneous data equivalent to time studies to prove "adequate cost data" under Medicare regulations. 42 C.F.R. § 413.24(a). The agency's interpretation of law was incorrect. On remand, the agency will be given the opportunity to consider Plaintiff's proffered evidence and determine the extent of compensation Plaintiff is owed without applying a faulty legal standard. The agency must consider all of Plaintiff's evidence, including Plaintiff's contemporaneous records, such as student rosters, and Plaintiff's non-contemporaneous testimony, data analysis, and time studies, in deciding whether Plaintiff has provided adequate cost data for fiscal years 2005 and 2006.

There is an exception to the general rule that errors of law require remand to the agency. The court should not remand if "it is crystal-clear that the [agency's] error renders a remand an unnecessary formality," in that a remand "would do little more than duplicate a process already undertaken." *Coalition for Gov't Procurement*, 365 F.3d 473-74 (quoting *NLRB v. Food Store Employees Union*, 417 U.S. 1, 8 (1974)). Upon remand, the agency will have to consider the full body of the evidence Plaintiff gathered in support of 2005 and 2006 cost data. The agency cannot require time studies or ignore substantial evidence supporting some level compensation simply because Plaintiff did not gather the evidence contemporaneous to the years at issue. Because of the agency's failure to follow these requirements in its initial review, remand would not "duplicate a process already undertaken" and would not be an "unnecessary formality." *Coalition for Gov't Procurement*, 365 F.3d 473-74.

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot

evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co.*, 470 U.S. at 744; *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657 (2007) ("[I]f the EPA's action was arbitrary and capricious . . . the proper course would have been to remand to the Agency for clarification of its reasoning."). To the extent the agency relied on an alleged failure on the part of Plaintiff to provide job descriptions for its employees, the agency's decision was arbitrary and capricious. The agency must reconsider Plaintiff's evidence without this unsubstantiated conclusion. In contrast, the agency failed to consider the important factors of consistency in reporting and Plaintiff's reliance interests. On remand, the agency must take up these issues.

### v. "Substantial Evidence" Review

Plaintiff also seeks relief under the APA's "substantial evidence" standard. 5 U.S.C. § 706(2)(E). With the court already finding the agency's decision to be arbitrary and capricious and remanding the case to the agency, the court will not review the agency's decision under the alternative analysis of "substantial evidence." *Richardson*, 402 U.S. at 401sss. Plaintiff itself argues that the court should not apply the "substantial evidence" standard. (*E.g.* ECF No. 35, PageID.1545 ("[Defendant's] request for 'substantial evidence review' of the agency's so-called 'factual findings' is unfounded.") The court will accept Plaintiff's suggestion and will not analyze the issue further.

## IV. CONCLUSION

Defendant, acting as secretary for the Department of Health and Human Services, improperly denied Plaintiff Medicare reimbursement for nurse training expenses. The agency decision was arbitrary and capricious. The regulatory interpretation relied on to deny Plaintiff reimbursement was erroneous. Plaintiff was not required to provide the agency time studies or purely contemporaneous records sufficient to replace time studies. Further, the agency improperly considered Plaintiff's evidence of job descriptions lacking and failed to consider the consistency of Plaintiff's cost filings over the course of seventeen years, as well as Plaintiff's reliance interests. The court will remand the case to the Department of Health and Human Services for proper adjudication in conformity with this opinion. Accordingly,

IT IS ORDERED that Plaintiff William Beaumont Hospital – Royal Oak's "Renewed Motion for Judgment" (ECF No. 33) is GRANTED.

IT IS FURTHER ORDERED that Defendant Thomas E. Price's "Renewed Cross-Motion for Judgment" (ECF No. 34) is DENIED.

IT IS FURTHER ORDERED that this case is REMANDED to the Department of Health and Human Services for further proceedings consistent with this opinion.

Lastly, IT IS ORDERED that the name of Defendant Secretary is changed on the docket from Thomas E. Price to Alex M. Azar II.

s/Robert H. Cleland                          /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 20, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\16-13528.BEAUMONT.CrossMotionsforJudgment.RMK.RHC.6.docx